Tucker, P.
The judgment in this case is, in my opinion, clearly erroneous. Two questions are made: ,1. whether the original contract was usurious ? and 2. whether RaynoMs, by giving the new bond, has lost the right of setting up the defence of usury ?
As to the first, it was argued, that there is no usury, because the principal sum was put in hazard, and the money was not to be returned at all events. If this were so, and it did not appear that the scheme was resorted to as a device to avoid the statute against usury, there could be no question that the transaction would not be usurious. But I think the proposition is itself a false inference from the facts proved. Because the proof is that the slave was to be returned when the money was paid, it seems to be supposed that the lender had no right to demand payment, and that it was at the borrower’s option to retain the money as long as he pleased, even though the slave should die or prove unprofitable. I do not think this a fair construction of the transaction. Such an arrangement ndght indeed have been made, but it was not made. The transaction was a simple loan of money without a day of payment being fixed, and the pledge of the slave for its security was but collateral. If there had been no pledge, it could not have been denied that the money might have been demanded presently. But the taking the pledge was not designed to change the contract, but to enforce the performance of it. There was nothing in the language of the bar *170 gain, from which it could be inferred that the lender intended to take the risque of losing his money, and to waive the legal effect of the loan by which it might be demanded at any moment. It seems therefore clear, that the lender had a right to require repayment when he pleased, upon the stipulated terms of surrendering the pledge; and it is equally clear, that if the slave had died, he would nevertheless have been entitled to his money; for the pledge was given to secure repayment, and not as a substitute for it.
This view of the case is fully sustained by the cases cited by mr. Leigh on the subject of pledges. In case a pawn be lost without the fault of the pawnee, he has still his remedy for the money against the pawner. Radcliff v. Davis, Yelv. 17. 179. Anon. 2 Salk. 523. Opinion of Holt, C. J. in Coggs v. Bernard, 2 Ld. Raym. 917. Anon. 12 Mod. 54. Manly v. Westbrook, Bull. N. P. 720. And the rule must be the same, where the property pledged dies, as where it is lost. So, in South Sea Co. v. Duncomb, 2 Stra. 919. it was held, that where money is lent generally upon a pledge, it will not deprive the lender of his remedy against the person of the borrower; and that to discharge the person, there must be a special agreement to stand to the pledge only. The same principle is affirmed in Thomas v. Terry, 1 Eq. Ca. Abr. 139. pl. 5. and recognized by this court in Price v. Williams, 5 Munf. 507. where there was such special agreement. Every pledge implies a loan, and every loan implies a debt; King v. King, 3 P. Wms. 360. And if, the pledge be destroyed, the payment of the debt may still be enforced against the person; 3 Bac. Abr. Bailment. B. p. 370. (citing Yelv. 179. Co. Litt. 209.) where it is laid down, that if a man lend perishable goods as a pledge, and they decay, yet the paw-nee may have debt for his money, for the duty continues. These authorities are all decisive of this case, unless it can be shewn to have been the intention of *171 the parties that the lender should look only to the pledge, and that in no event was he to have a charge upon the person. But this does not appear in the case. There was then a personal obligation to repay, and of course the principal never was in hazard. The contract was usurious.
The next question is, whether the giving the bond by Raynoids to the administrator of Jackson, deprives him of the defence that the original contract on which it is founded was usurious ? I think it very clear, that the contract is not purged of the usury. If it were, the bond would indeed be valid; for though the original contract be usurious, yet if no part of the usury has been received, and a new security is given for the principal sum with legal interest only, it is good. In such case, the parties having repented of the usury, and purged the contract of its taint, the new security has only bound the debtor to fulfil a moral obligation by paying what he had borrowed: for he could not even be relieved in equity against the usury without doing this. Barnes v. Hedley, 2 Taunt. 184. But where any part of the new security is for any portion of the usury, or where, after receiving the usury, the lender takes a new security for the principal, it is void; for it is a security given to further the usurious contract, and its direct effect is to give full efficacy to the original corrupt agreement. In truth, the avails of the slave’s hire, in this case, were applicable to the principal, in part, at least. Of course, there was not 200 dollars due of principal. A part of the 200 dollars, therefore, was interest, and usurious interest included in the bond, which, consequently, was void. Wickes v. Gogerly, 1 Carr. & Payne 396. 11 Eng. C. L. Rep. 434.
It was argued, that the bond being taken to a third person makes a difference. And this is true, where the third person is not a volunteer, but an assignee for value : and then, if the assignee is ignorant of the usury, *172 the new security will estop the party who gives it from pleading the usury; otherwise not. Chapmans. Black, 2 Barn. & Ald. 588. Cuthbert v. Haley, 8 T. R. 390. According to our decisions, in cases of the kind, the debtor must hold out inducements to the third person who purchases it, to deal with the claim; else, the debtor will not be deprived of his defence; Buckner & al. v. Smith & al. 1 Wash. 299. Hoomes v. Smock, Id. 389. Woodson & al. v. Barrett & co. 2 Hen. & Munf. 80. Mayo v. Giles’s adm’r, 1 Munf. 533. And the reason of his being bound is, that by his mala fdes in concealing the consideration and inducing the assignee to pay his money for the claim, he has exposed him to a loss. But this reason cannot apply to the administrator of the lender, who takes a bond for an usurious debt: he stands in his intestate’s shoes. He has sustained no loss, and unless he acts foolishly, he cannot sustain any. The debt is not assets till recovered, and it is his own folly to treat it as such, either by applying it to the payment of debts or by distribution. But admitting the contrary, it would only afford a ground for relief in equity against the defence of usury, upon proof that the administrator had actually treated the bond as assets, and paid or distributed the amount of it in advance. The suggestion that he might do so, is not enough to deprive the debtors of the defence of usury.
The other judges concurred. Judgment reversed, and judgment entered for the plaintiffs in error, defendants below.