Ira M. Cobe, Defendant in Error, *vs.* E. H. Guyer *et al.* Plaintiffs in Error.

*Opinion filed December 15, 1908—Rehearing denied Feb. 3, 1909.*

1. Loan associations—*extent of exemption from Interest law.* The exemption of homestead and loan associations from the operation of the Interest law applies only to interest, fines and premiums accruing according to the provisions of the act providing for the organization of such associations.

2. Same—*when transaction must be held to be usurious.* Where the total amount to be paid to a homestead and loan association for the use of money exceeds the legal rate of interest the transaction must be held to be usurious, unless the premium required to be paid was determined in the manner provided by the Homestead and Loan Association act.

3. Same—*what is necessary to sustain loan at fixed rate of interest and premium.* To sustain a loan by a homestead and loan association at a fixed rate of interest and premium the association must, by its by-laws, have dispensed with the offering of its money for bids in open meeting. (*Collins* v. *Cobe,* 202 Ill. 469, distinguished.)

4. Same—*what does not show that an association has dispensed with bids for loans.* The record of a special meeting of the stockholders of a homestead and loan association showing a motion to amend the by-laws by providing for loans at a fixed rate of interest and premium does not show that the association has dispensed with bids for loans in open meeting, where the record fails to show any action on the motion by the stockholders.

5. Usury—*when giving new notes does not purge transaction of usury.* Settlement and agreement upon the amount due upon an old loan and the giving of a new note do not preclude the defense of usury existing in the original transaction, and so long as any part of the original debt remains unpaid the debtor may insist upon the deduction of usury, and only the balance of the principal remaining after deducting from the principal all payments, whether of principal or interest, can be recovered.

6. Same—*a mere substitution of securities does not cut off the defense of usury.* No form which can be given to a contract, no device by which a new form is given to an old transaction tainted with usury, and no mere substitution of securities, will avail to cut off the defense of usury.

7. SAME—*what does not preclude defense of usury.* The fact that in arriving at the amount of the prior indebtedness when a new mortgage to a loan association was given the mortgagor was credited with his proportionate share of earnings of the association does not preclude him from making the defense of usury.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding.

J. T. KENWORTHY, and S. R. KENWORTHY, for plaintiffs in error.

S. W. SWABEY, (W. R. MOORE, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error is prosecuted to reverse a judgment of the Appellate Court affirming a decree of foreclosure. The mortgagee was the Masonic Mutual Savings and Loan Association, a corporation organized under the Homestead and Loan Association act, and the defendant in error the assignee of the receiver of said association, appointed by the superior court of Cook county under section 25 of that act. Several reasons for reversal are urged, but in the view we take of the defense of usury, which was insisted upon in the circuit court, it will be unnecessary to consider any other question.

The mortgage sought to be foreclosed was dated July 1, 1899, and was made to secure promissory notes of that date for the sum of $12,000, but the indebtedness originated in August, 1896, when the loan association made a loan of $10,000 to the plaintiffs in error and one George W. Walker upon one hundred shares of its stock. This loan was secured by a mortgage, and the bond given therefor required the payment of $50 dues, $50 interest and $50 premium,

monthly, until the maturity of the stock, when the loan would be paid in accordance with the plan of the association. Subsequently, the makers of said bond being in default, a new loan of $2600 was made to them on August 30, 1898, on twenty-six shares of the stock of the association, which was also secured by a mortgage, the payments required being $13 dues, $13 interest and $13 premium monthly. No money was advanced on this loan but credit was given for its amount on the delinquent installments on the former mortgage. A few months later the obligors were again in default on both loans, the loan association claiming the total amount due to be $13,379.60. Thereupon the twenty-six shares of stock were canceled. Notes for $12,-000, bearing seven per cent interest, dated July 1, 1899, and secured by mortgage, were given by plaintiffs in error and the two former mortgages were released. According to the claim of the association the value of the stock canceled, $1328, and the $12,000 mortgage notes being credited on the amount due on the former mortgage, left a balance of $51.60, for which the plaintiffs in error gave their note due in sixty days.

The exemption of homestead and loan associations from the operation of the Interest law applies only to interest, fines and premiums accruing according to the provisions of the act providing for their organization. (*Jamieson* v. *Jurgens,* 195 Ill. 86; *Borrowers' Building Ass.* v. *Eklund,* 190 id. 257.) By the terms of the bonds given for the payment of the $10,000 loan and the $2600 loan, the obligors were required to pay $50 and $13 a month, respectively, as dues on the stock, and interest and premiums at the rate of twelve per cent per annum. Since the total amount to be paid for the use of the money exceeded the legal rate of interest, these transactions must be held to have been usurious under the general laws of the State unless the premium required to be paid was determined in the manner provided by the

Homestead and Loan Association act. The modes of determining such premium were set forth in section 8 of the act, and were either by bids for the preference or priority of loan in open meeting, or, if the association had by its by-laws dispensed with the offering of its money for bids in open meeting, by the priority of the applications for loans of its stockholders. The $10,000 loan and the $2600 loan were not made upon bids made for the preference or priority of loan in open meeting. The association did not offer its money to be loaned for the highest premium which might be bid for it. The money was loaned at a fixed rate of interest and premium, and it is therefore necessary to inquire whether the association had by its by-laws dispensed with the offering of its money for bids in open meeting, for if it had not, the premium did not accrue according to the provisions of the act.

In order to show the adoption of such a by-law the defendant in error introduced in evidence the record of a special meeting of the stockholders of the association held on the 19th day of August, 1891. The whole of such record, so far as it refers to the matter now under consideration, is as follows:

"Bro. John H. Randall then moved that article 6 of the by-laws be amended by striking out sections 1 and 2 and in lieu thereof the following inserted:

" 'Sec. 1. Every loan of this association shall be made upon a non-negotiable note or bond, bearing interest and premium, each at the rate of six per cent per annum, and secured by first mortgage on real estate, which security shall be satisfactory to the board and shall be accompanied by a transfer and pledge of the shares of the borrower to the association. The shares so pledged shall be held by the association as collateral security for the performance of the conditions of said note or bond and mortgage: *Provided,* that the shares, without other security, may, in the discretion of the board, be accepted as security for an amount not

to exceed their withdrawal value: *And provided further,* that all premiums shall be paid in equal monthly installments on or before the 20th day of each and every month during the continuance of the loan.' "

No action on the motion appears to have been taken by the stockholders. The record does not show the adoption of the by-law. The amount of the first loan was $10,000, and no money was afterward advanced on any of the loans. Payments were made before July 1, 1899, to the amount of $1230.52, all of which the law required to be credited on the principal, so that when the $12,000 notes were given the amount really due was only $8769.48. Since that time the master's report shows payments amounting to $9413.17, which overpaid the amount due on the notes.

This case is different from that of *Collins* v. *Cobe,* 202 Ill. 469, in which the stockholders had adopted a by-law authorizing the loaning of the money of the association at a fixed rate of interest and premium though the statute did not then authorize dispensing with bids in open meeting for the preference of loans. The law was afterward amended so as to permit the loaning of money at a fixed rate without requiring bids therefor, and the association having continued to do business in the method provided by the by-law, which had been adopted by the proper authority for that purpose, it was held that the borrowers were estopped to dispute the existence of the by-law by their recognition of it in procuring the loan according to its provisions. But in this case the by-law never was adopted. There is no evidence that the plaintiffs in error had any knowledge on the subject of the by-laws, or that they were stockholders of the association before the completion of the $10,000 loan made to them. Under such circumstances there is no estoppel against the borrower. (*Free Home Building Ass.* v. *Edwards,* 223 Ill. 126.) Nor does the fact that, in arriving at the amount due upon the prior indebtedness at

the time the mortgage now in controversy was given, the plaintiffs in error were credited with their proportionate share of the earnings of the association, preclude them from making the defense of usury.

It is contended by the defendant in error that the cancellation of the stock and original securities and taking new notes of plaintiffs in error purged the transaction of usury. It is true that if, after a usurious transaction has been completely settled and closed, a new loan is made, the borrower will not be allowed to set up the usury in the former transaction against the new loan. Usury in one transaction can not be availed of in another. But settlement and agreement upon the amount due and the giving of a new note do not preclude the defense of usury existing in the original transaction. So long as any part of the original debt remains unpaid the debtor may insist upon the deduction of the usury, (*Payne* v. *Newcomb,* 100 Ill. 611; *Jenkins* v. *International Bank,* 97 id. 568; *House* v. *Davis,* 60 id. 367;) and only the balance of the principal remaining after the application on the principal of all payments, whether of principal or interest, can be recovered. (*Harris* v. *Bressler,* 119 Ill. 467.) No form which can be given to a contract, no device by which a new form is given to an old transaction tainted with usury, and no mere substitution of securities, will avail to cut off the defense of usury. (*Hunter* v. *Hatch,* 45 Ill. 178; *Nickerson* v. *Babcock,* 23 id. 561.) The giving of a new note by one of several joint debtors does not deprive the maker of the new note of the right to deduct usury contained in the old note. *Safford* v. *Vail,* 22 Ill. 326.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*