# MARTIN *v.* POOLE.

NEGOTIABLE INSTRUMENTS; NOTICE; DEEDS OF TRUST; PRINCIPAL AND AGENT.

1. To affect with constructive notice a purchaser of negotiable paper who has bought in good faith and for value and without actual notice of fraud of antecedent parties, it must appear that his failure to obtain actual notice was an act of gross or culpable negligence.

2. Constructive notice, in its nature, is no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted.

3. While the release of a deed of trust by the trustees before payment of the debt secured is a breach of trust, such release will protect a subsequent innocent purchaser or mortgagee for value, without notice.

4. The fact that a deed of trust was released by the trustees before maturity of the promissory note secured by it will not be sufficient to charge the purchaser for value of a note subsequently made and secured by a new deed of trust, and upon which there was an indorsement of partial payment, with constructive notice of the fact that the first note had not been paid, especially if he bought his note a year after the release of the first deed of trust and the recording of its release, and at a time when the note it secured, if not paid, was long overdue.

5. A firm of real estate and note brokers will not be held to be the agents of the purchaser from them, for value and without notice, of a promissory note secured by deed of trust, so as to charge him with notice, through them, of fraud in the release by the trustees of a prior deed of trust before payment of a note is secured, where one of the members of the firm was a trustee in the later deed of trust and

the other was the holder of the note it secured, and where the sale of the note was made as the result of an application to the firm for a note for purpose of investment, and the note was sold at a slight discount.

No. 2211. Submitted December 13, 1910. Decided January 3, 1911.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit in equity to vacate the release of a deed of trust for fraud and for the declaration of the deed of trust as a lien upon the real estate covered thereby. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal [by Marion E. J. Martin] from a decree of the supreme court of the District upon a bill in which the complainant, Florence Poole, seeks (1) the setting aside and annulment of a release of certain real estate from a deed of trust, on the ground of fraud in the execution of said release, and (2) the declaration of said deed of trust as an existing lien against said real estate, with priority over a later deed of trust securing a negotiable note acquired by the defendant before maturity for value and without notice of existing equities.

The facts material to the determination of the question here in issue, as they appear from the amended and supplemental bills of complaint, the answers of the defendant, and the agreed statement of facts upon which the case was heard below, are substantially as follows: On September 14th, 1901, James A. Wineberger, now deceased, executed a deed of trust to Lee R. Martin and Thomas R. Martin, trustees, conveying lot 13 in square 56 in this city to secure the payment of a note for $2,000, payable three years after date to the order of the complainant, with interest. This deed was duly recorded on October 28th, 1901. On June 15th, 1904, about three months before the maturity of said note, said trustees fraudulently executed a release of said deed of trust, *which was duly recorded*

*on June 25th,* 1904. This release recites that the said James A. Wineberger is to have and to hold said premises "with the appurtenances, unto and to the use of the said James A. Wineberger, his heirs and assigns forever, fully released and discharged from the effect and operation of said deed of trust, the indebtedness secured thereby having been fully paid, the note representing said indebtedness having been shown us marked paid, and duly canceled." On said June 25th, 1904, Wineberger executed a deed of trust conveying the same property and also lots A and B in square 88 to said Lee R. Martin and Mark F. Finley, as trustees, to secure a note for $3,500 and interest, payable three years from date to the order of Thomas R. Martin. *This deed of trust was duly recorded, on the same day.* Said Thomas R. Martin as the holder of said $3,500 note subsequently indorsed thereon a payment of $1,000, and some interest.

According to the agreed statement of facts, from which we now quote, this note "was purchased from said Thomas R. Martin through said Martin Brothers by Richard Poole, the late husband of the defendant, Florence Poole, under the following circumstances, that is to say, in the month of July, 1905, the said Richard Poole applied to said Martin Brothers for an investment for $2,500 of his money, and said Martin Brothers offered to him as an investment the said note for $3,500 bearing an indorsement on the back that $1,000 had been paid upon the principal of said note. That on or about July 25th, 1905, the said Richard Poole paid the said Martin Brothers $2,475 for said note, and received the same, together with a certificate of title signed by J. Thomas Sothoron, which is filed herewith and marked 'Defendant's Exhibit No. 2.' That the indorsement of interest paid January 5, 1906, now appearing on the back of said note for $3,500, is in the handwriting of said Richard Poole; and the indorsement of interest paid September, 18th, 1906, is in the handwriting of Leonard H. Poole, administrater of Richard Poole. That at the same time, the said Richard Poole received a tax certificate, a policy of insurance, and the deed of trust securing the said note, which said

papers are filed herewith marked respectively 'Defendant's Exhibit No. 3,' 'Defendant's Exhibit No. 4,' and 'Defendant's Exhibit No. 5.' That in the course of the negotiations for the purchase of said note, said Richard Poole received four certain letters from said Martin Brothers, which are attached hereto marked 'Defendant's Exhibit No. 6,' 'Defendant's Exhibit No. 7,' 'Defendant's Exhibit No. 8,' and 'Defendant's Exhibit No. 9.' That said defendant, Florence Poole, received said note as part of her distributive share of the estate of said Richard Poole, who died on or about the 12th day of January, 1906. It is also admitted that the plaintiff never had any knowledge of the existence of said $3,500 note, or the deed of trust given to secure the same, until the early part of the year 1907, a few days before the filing of her original bill in this cause; and that neither said Richard Poole nor said Florence Poole had any actual knowledge that the note for $2,000 mentioned in the fifth paragraph of said amended bill had not been paid and was still in the possession of the plaintiff, nor that the release of the trust securing said $2,000 note was made without her knowledge and in fraud of her rights, nor that there were any equities which might be asserted against said note for $2,500."

Each of the four letters above referred to from Martin Brothers to said Richard Poole was signed "Thomas R. Martin," who, as above noted, was the holder of the security purchased by Poole. In the first of these letters, dated July 20th, 1905, Martin wrote: "I have two loans at this time, papers all complete. One of them for $2,500 running at 6 per cent. They are first-class securities on improved property, and I bring them to your attention, and will you kindly advise me this week if you are in the market for a loan." In the second letter, two days later, "I am in receipt of your kind favor of recent date, and beg to advise you that I shall furnish you with complete data on the loans I offer you. They are good rental properties, and interest in each case will be paid promptly as it falls due." The third letter is unimportant. The fourth, dated July 31st, 1905, reads as follows: "I make in-

closure to you of the papers and note in the Wineberger case. I have already forwarded to you the tax certificate which is brought down to date. The tax certificate in each of these cases should go with the papers so as to keep them intact."

The estate of Wineberger is insolvent and Martin Brothers, individually and as a firm, have been adjudged bankrupt. The only recourse, therefore, which the parties to this suit have is against the real estate embraced in the two deeds of trust above described. The deed of trust securing complainant's note was upon lot 13 only. Consequently lots A and B in square 88, which were included in the second deed of trust, are not here involved.

Under an interlocutory decree the real estate described in both deeds was sold by trustees appointed for that purpose, and the proceeds held in lieu thereof and subject to the further order of the court. By its final decree the court held that the note of the defendant is a first lien upon the proceeds of the sale of both tracts; that the complainant's note be reinstated as a lien upon the proceeds of said sale but subject to the lien of the defendant. It is conceded that there will be little, if any, balance remaining after the liquidation of the defendant's demand.

*Mr. James S. Easby-Smith* and *Mr. Ralph B. Fleharty* for appellant.

*Mr. H. W. Sohon* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The complainant places her objection to the decree on the ground, first, that said Richard Poole had constructive knowledge of the equitable rights of the complainant "by reason of the existence of the public records and the peculiar circumstances surrounding the entire transaction, and particularly surrounding his purchase of the note," and, second, that said Poole "had implied knowledge by reason of the actual knowl-

edge of Thomas R. Martin, his predecessor in title, and of Martin Brothers, who were his agents in the purchase of 'the note and security therefor." We will consider these propositions in the order advanced.

It is admitted that Mr. Poole, when he purchased the note now held by the defendant, acted in good faith and without actual knowledge of the equitable rights of the complainant. In such a situation the rule, as stated by the Supreme Court of the United States, is that to affect the purchaser with constructive notice it must appear that his failure to obtain actual notice "was an act of gross or culpable negligence." *Wilson* v. *Wall,* 6 Wall. 83, 18 L. ed. 727. Again, in *Townsend* v. *Little,* 109 U. S. 504, 27 L. ed. 1012, 3 Sup. Ct. Rep. 357, the court said: "Constructive notice is defined to be in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. \* \* \* As said by Strong, J., in *Meehan* v. *Williams,* 48 Pa. 238, what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell."

It is true that when Martin Brothers, as trustees and holders of the legal title of said lot, executed their release of the deed of trust securing complainant's note, that note was not yet due, but it is also true that said release was recorded in ten days from its date, namely on June 25th, 1904; that the second deed of trust was executed on the same day and immediately recorded. When, therefore, Mr. Poole was offered this security in July, 1905, the record showed the prior trust to have been released more than one year previously; that the original or complainant's note, if not paid, had been long since overdue; and that the second deed of trust had been of record and unchallenged for more than a year. Was there anything in the situation so inconsistent with the verity of the record as to put him upon notice? It is not an unusual occurrence for a negotiable note to be paid before maturity, and the release of a trust securing such a note naturally follows. The trustees in the recorded release certified that the note had been paid

and that it had been shown to them so marked "and duly canceled." It has since developed that this recital was false, but how was Mr. Poole to know this? The original deed of trust vested in the trustees the legal title to the land, and while the release of the land before payment of the note would be a breach of trust, such release would protect an innocent subsequent purchaser or mortgagee. *Williams* v. *Jackson,* 107 U. S. 478, 27 L. ed. 529, 2 Sup. Ct. Rep. 814. In that case Edwin A. Sweet and wife purchased a house in this city of Augustus Davis and gave him four promissory notes aggregating $8,000 for deferred purchase money, to secure which they executed a deed of trust to Chas. T. Davis and William Stickney. The notes were soon transferred for full value and before maturity to Jackson. Before the maturity of any of these notes and without Jackson's knowledge, the trustees executed a release of the trust, Augustus Davis joining in the release. At about the same time the Sweets employed Chas. T. Davis, who was a partner of his father, Augustus, in the real estate business, to negotiate another loan, that they might pay the first and obtain an extension of credit. Williams was approached and agreed to loan $5,000 if satisfied with the title to the property. Davis furnished him with a certificate of a conveyancer that the title was good, subject to said first trust. Thereupon a new trust was executed in favor of Williams, he being presented with a second certificate showing the cancelation of the first trust and that the same was of record. At the time neither Williams nor the Sweets knew that August Davis was not the holder of the first notes. The court in its opinion said: "To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or wilful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. *Hine* v. *Dodd,* 2 Atk. 275; *Jones* v. *Smith,* 1 Hare, 43, 11 L. J. Ch. N. S. 83, 6 Jur. 6, affirmed in 1 Phill. Ch. 245, 12 L. J. Ch. N. S. 381, 7 Jur. 431; *Agra Bank* v. *Barry,* Ir. Rep. 6 Eq. 128, L. R. 7 H. L.

135, 21 Eng. Rul. Cas. 784; *Wilson* v. *Wall,* 6 Wall. 83, 18 L. ed. 727; *Norman* v. *Towne,* 130 Mass. 52.

"The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail, and he is entitled to priority."

Taking into consideration what the record disclosed to Poole when he purchased the second note, we certainly do not think that the mere fact that the first trust had been discharged prior to the maturity of the first note was sufficient to put him upon inquiry; nor do we attribute any importance to the fact that prior to Poole's purchase of the second note, and prior to its maturity, an indorsement of $1,000 had been made thereon. Poole was dealing with Martin Brothers, one of whom was the holder and payee of the note, and the other of whom one of the trustees under the deed of trust securing it. The indorsement had been made by the payee. The transaction on its face was perfectly regular, and not calculated in any way to arouse Poole's suspicions.

There is nothing in this record, as we read it, to substantiate the contention that Martin Brothers were the agents of Poole. There is no evidence that he employed them, and the record apparently rebuts such a presumption, for it appears that he paid them less than the face value of the note purchased, which would indicate that a slight discount was made him. The certificate of title furnished Poole was one year old at the time, and was evidently procured long prior thereto for use in selling this note. There is another cogent reason for holding that Martin Brothers were not Mr. Poole's agent. From the letters to which reference has previously been made, it appears that Mr. Poole inquired of them whether they had any securities for sale, and that Thomas R. Martin, the holder of the note purchased thereupon, offered that note for sale. It is apparent, therefore, that Martin Brothers were representing Thomas R. Martin, a member of the firm, and that Mr. Poole was nothing more than a purchaser of the security which they offered him. In the cases relied upon by the complainant, agency was either admitted or clearly proved. *Connecticut General L. Ins. Co.* v.

*Eldredge,* 102 U. S. 545, 26 L. ed. 245, is clearly not in point. There the *accredited* agent of the second purchaser had actual knowledge of existing equities when the second transaction was consummated, and it was of course held that his principal was bound by his knowledge. The court was careful to confine its opinion to the precise point considered, saying: "To prevent misapprehension, it is proper to state that we do not wish to intimate any opinion upon the general question whether a purchaser of property may not rely upon a release of a previous mortgage or trust deed found upon the official records of the district where the property is situated, without further inquiry, where he has no knowledge of the nonpayment of the indebtedness secured."

Finding no error in the record, the judgment must be affired, with costs.                     *Affirmed.*