## Manchester National Bank v. Herndon.

(Decided June 14, 1918.)

### Appeal from Scott Circuit Court.

1. Corporations—Knowledge of Officer Acting in Own Interest—Rule. —The general rule which does not impute to a corporation the knowledge of its officer when the officer is acting in his own interest, does not apply when the same officer acts for two corporations in a transaction between them; in such a case the officer's knowledge will be imputed to each corporation.

2. Usury—Merger of Banks—Purging Note of.—Where a state bank holding a note embracing usury was subsequently merged into a national bank, the latter taking the assets and assuming the liabilities of the former, a single officer of the two banks representing each in the transfer of its assets, the national bank took the note containing the usury subject to the right of the maker to purge it of the usury.

3. Appeal and Error—Finding of Chancellor.—Where the proof is contradictory and the mind is left in doubt upon a question of fact, the finding of the chancellor will not be disturbed.

JAMES F. ASKEW, ROBERT B. FRANKLIN, ROBERT E. TALBOTT and JOSEPH P. SADLER for appellant.

SAMUEL M. WILSON and WILLIAM P. DeSAUSSURE for appellee.

Opinion of the Court by Judge Miller—Affirming.

The appellant, the Manchester National Bank, is a banking corporation created under the banking laws of the United States, with its place of business in Richmond, Va. In June, 1913, the Manchester National Bank instituted this action in the Scott Circuit Court, against the appellee, Charles T. Herndon, upon five promissory notes aggregating, with interest, something over $8,000.00.

The several notes which were made the basis of the action may be briefly described as follows:

    (1)   A note dated February 7th, 1913, for $3,414.20.
    (2)   A note dated February 28th, 1913, for $486.63.
    (3)   A note dated March 7th, 1913, for $1,307.17.
    (4)   A note dated March 31st, 1913, for $1,149.43;
    (5)   A note dated April 8th, 1913, for $1,623.42.

These five notes did not represent original transactions, but in each instance the note was the culmination of a series of renewals. An attachment was taken out and levied upon a farm of about 118 acres of land in Scott county, owned by Herndon.

In his answer Herndon alleged that the second and fourth notes above described wholly represented usury exacted from him by the bank, and that the accumulated interest contained in the first note was tainted with usury, and for that reason no interest at all can be collected thereon under section 2822 of the Virginia Code of 1887. Herndon further answered that the Manchester National Bank was not a *bona fide* purchaser of these notes for value, in due course, and without notice, but that it had acquired all of them under such circumstances as charged it with notice of the usury therein.

In the meantime Herndon sold his farm, and, in order to make a title to the purchaser, he paid the notes sued on, with interest, aggregating $8,436.07, under an agreed order reciting that there was still a controversy between Herndon and the bank as to the latter's right to have and retain (a) the sum of $623.03, which was the accrued interest upon the first note sued on, which was originally given for $3,000.00; (b) the sum of $514.00, being the second note above described for $486.63, with the interest thereon, and (c) the further sum of $1,209.80, being the fourth note sued on, with interest, it having been originally given for $1,149.42. It will thus be

seen that the third and fifth notes sued on have been eliminated from this action, and that the controversy now between the parties relates alone to the first, second and fourth notes above described.

Herndon contends that when he executed the first note, which was originally given for $3,000.00, the bank required him to execute to it, as a bonus for the loan, another note for $1,000.00, which is now the fourth note sued on which, with interest, amounts to $1,209.80; and further, that since the note for $3,000.00 embraces accrued interest aggregating $623.03, the bank is not entitled to recover either $1,209.80 or $623.03 since they both represent usury upon the original note for $3,000.00. This claim, as above stated, is based upon the Virginia Code, which forfeits all interest where usury has been charged.

The appellant, the Manchester National Bank, is the successor of the Bank of Manchester, a state bank. The original note for $3,000.00 was given to the Bank of Manchester. Simultaneously with the execution of the note for $3,000.00 to the Bank of Manchester and, according to Herndon's claim, as a part of the transaction, he executed the note for $1,000.00 (now $1,209.80) to Clarence Vaden, who was then the cashier of the Bank of Manchester. The appellant contends that the note for $1,000.00 represented a private transaction between Herndon and Vaden, and that the Bank of Manchester had nothing to do with it, and that it was finally bought by the appellant for value and without notice of its infirmity.

The circuit court sustained the contention of Herndon as to each of these claims by directing a recovery thereof from the bank, which now appeals, complaining that the court was in error in allowing Herndon to recover any one of these claims. It is clear that Herndon's right to recover the first item of $623.03, which is the accrued interest on the note for $3,000.00, is dependent upon his right to recover the third item in controversy, which represents the original alleged bonus note for $1,000.00, which, when finally paid, amounted to $1,209.80. If the note for $1,000.00 was given as a part consideration for the original loan of $3,000.00, it clearly constituted usury, which, under the Virginia Code, would exclude both the first and the last items now in controversy.

A great deal of testimony has been taken upon the genesis of the $1,000.00 note, and several explanations have been suggested in connection with this transaction. Without, however, going into a detailed statement of these numerous transactions, we think the finding of the chancellor to the effect that the note for $1,000.00 was given as a part of the transaction in which the $3,000.00 were loaned to Herndon by the Bank of Manchester, is supported by the proof, and that in that transaction Vaden represented his bank.

It is insisted, however, that when the plaintiff, as a national bank, succeeded the Bank of Manchester and took over its assets for a consideration, it became a *bona fide* purchaser for value and without notice of the usury contained therein. Vaden testified that he did not enter the note for $1,000.00 on the books of the Bank of Manchester, but put it in an envelope and kept it in his possession with other assets of the Bank of Manchester until some time in February, 1910, when he took it out of the envelope and turned it over with the other assets to the Manchester National Bank, and that the Manchester National Bank did not allow him anything for it, but placed it to the credit of the Bank of Manchester. Clearly the note for $1,000.00 was never the property of Vaden; it belonged to the Bank of Manchester and was turned over, along with the other assets of that bank, to its successor, the plaintiff in this action.

And, it is further claimed, that although Vaden was the vice-president of the appellant and was the active man in converting the Bank of Manchester into a national bank, his notice of the note's infirmity cannot be imputed to the appellant bank because Vaden was acting in his own behalf. This, however, erroneously assumes that Vaden was acting for himself. We think the circuit court was fully justified in its conclusion that Vaden represented both banks and that he did not represent himself at any time in connection with the note for $1,000.00, and that being true, the rule that when a bank officer is personally interested in a note or other matter pertaining to the bank's affairs his knowledge is not to be imputed to his bank, because his interest is best served by concealing it, has no application here. This question was considered at length by this court in the late case of the Ohio Valley Banking & Trust Co. v. Cit-

izens' National Bank, 173 Ky. 640, where it was pointed out that the exceptional rule which does not impute the officer's knowledge to his corporation when the officer is acting in his own interest, does not apply when the same officer acts for both corporations. See also Citizens' Savings Bank v. Walden, 21 Ky. L. R. 729, 52 S. W. 953; Mutual Life Ins. Co. v. Chosen Friends' Lodge, 29 Ky. L. R. 394, 93 S. W. 1044. Vaden was not only the cashier of the Bank of Manchester, but he was perhaps the most active of all concerned in the reorganization of that bank as the Manchester National Bank, and was its vice-president. Under these conditions Vaden's knowledge will be imputed to appellant, and, thus having notice of the infirmity in the notes it was not, under the Virginia Negotiable Instrument Law, a holder in due course. Subsection 52 of section 2841A of the Code of Virginia. (Va. Acts 1898, p. 896.)

The remaining item in dispute consists of a note originally draw on December 8th, 1910, for $428.50, which, with interest thereon, aggregates $514.69. This item of $428.50 was made up of two notes for $150.00 each; some of the accrued usurious interest on the notes for $1,000.00 and $3,000.00 respectively, amounting to $100.75; interest on the two notes for $150.00 each, amounting to $16.63; and an overdraft of $11.12. In giving judgment upon this item, the circuit court gave the appellant a credit for the overdraft of $11.12. That portion of this item is, therefore, not now in controversy.

The chief controversy is over the two notes for $150.00 each. Appellant contends that it paid full value for these notes and without notice of any infirmity embraced therein; and, without attempting, in any way, to direct the court's attention to the particular proof relating to this item, in its brief, it merely invites the court to examine the record consisting of more than a thousand pages of proof, "to determine whether all or any of the items that went into the note for $428.50 were without consideration, as claimed by the defendant Herndon." As to its contention that it acquired this note for value, without notice of its infirmity, and in due course, appellant stands in the same position it occupied with respect to the other two items, and what has been said above upon those subjects applies equally here.

The proof as to this item is somewhat confused, due probably to the appellant's method, after the merger of the two banks, of carrying Herndon's account partly on the books of the appellant, of which it sent him statements, and partly on the books of the Bank of Manchester, then in the appellant's possession, but of which it sent Herndon no statement. At first Herndon seems to have been under the impression that these two notes for $150.00 each had been superseded by two subsequent notes aggregating about $2,500, but, after a more complete investigation Herndon became satisfied that he was mistaken in his first impressions. He complained that he had never been credited with the proceeds of these two notes, and, the books of the bank showed that the first entry of these notes is of a renewal, in which he is credited with the proceeds of the new notes and charged with the payment of an old one.

Vaden testified that he was under the impression the notes were discounted and the cash paid over the counter for them; but Herndon, Mrs. Benet and Bradley, the only persons who participated in this transaction upon the part of the defendant, all testified that they never, at any time, received cash over the counter of the bank, except by check. Furthermore, when called upon to give his note for $428.50, in which these two notes of $150.00 each were consolidated with other items, as above stated, Herndon protested, claiming there would have to be an adjustment of the matter upon a more thorough examination.

At the time these notes were executed Herndon was at college, having little ready money, but certain expectations from the estate of his father in Kentucky, and also from the estate of his grandmother. In order to get ready money from both of these sources, Bradley arranged with Vaden for Herndon to overdraw his account, giving Vaden from time to time a number of small notes for the bank's protection. It seems that these notes were not discounted, but were held by Vaden for a short time until Herndon received sufficient money from the sources above indicated, which was placed to his credit, thus covering his overdraft at the bank. Vaden then returned the notes to Herndon with the exception of these two for $150.00 each. Herndon remained at college until December, 1910, and received no statements

from the bank until he called for them in April, 1911, when he got all of his monthly bank statements at one time. Upon examining these statements, Herndon claimed he was entitled to this credit.

While the proof upon this item is not entirely satisfactory upon either side we do not feel justified in reversing the judgment. Where the proof is contradictory and the mind is left in doubt upon a question of fact, the finding of the chancellor will not be disturbed. Byassee v. Evans, 143 Ky. 415; Kirkpatrick, Exor. v. Rehkopf, 144 Ky. 134; Dotson v. Norman, 159 Ky. 786; Herzog v. Gipson, 170 Ky. 325.

Judgment affirmed.