### BOWEN et al. v. MOUNT VERNON SAV. BANK et al.

No. 7175.

United States Court of Appeals for the District of Columbia.

Decided June 26, 1939.

---

[4] Journal Company v. Federal Radio Commission, 60 App.D.C. 92, 94, 48 F.2d 461, 463.

George C. Gertman, of Washington, D. C., for appellants.

L. Harold Sothoron, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

### EDGERTON, Associate Justice.

In 1927 appellants made a valid note for $43,000, payable on May 5, 1929, and secured by a second deed of trust. About ten days before it fell due James H. Baden, vice-president of the Commercial Na-tional Bank, the then holder, informed appellants' son, who had asked for an extension, that the bank would extend the note for two years if appellants would pay a "curtail" of $3,800 and a "bonus" of $4,200. On May 8, 1929, the demanded curtail and bonus were paid and the note was extended to May 5, 1931 at six per cent per annum. On the same day the note, showing an unpaid balance of $39,200, was sold for $35,000 to appellee, Mount Vernon Savings Bank, which still holds it. In due course, appellants paid the promised interest to May 5, 1931. In 1931, and again in 1932, the note was extended at eight per cent, without curtail or bonus. The principal has been due since May, 1933, and appellants have paid no interest since that time.

The legal rate on written contracts is 8 per cent. D.C.Code, 1929, Tit. 17, §§ 2, 3. The "bonus," being a sum paid to the creditor for the continued use of the money, clearly counts as interest for the purpose of the usury law; and the bonus, added to the nominal interest, on the two-year extension of May, 1929, exceeded 8 per cent. The extension was therefore usurious. In any action brought upon a usurious contract, "any payments of interest * * * shall be deemed and taken to be payments made on account of the principal debt." Tit. 17, § 5. Appellants contend that they are entitled to credit the bonus, and all "interest" paid after May, 1929, on the principal, and that they therefore owe only $23,456.39. They brought a bill in equity in the District Court against the Savings Bank and the trustee, to redeem the property from the operation of the deed of trust on payment of that sum. The Savings Bank claims the outstanding face amount of the note, $39,200, together with interest thereon at 8 per cent from 1933. This appeal is from a decree dismissing the bill.

The statute provides that "no bona fide indorsee of negotiable paper purchased before due shall be affected by any usury exacted by any former holder of said paper unless he had notice of the usury before his purchase." D.C.Code, Tit. 17, § 5. It is necessary to determine whether the Savings Bank had notice. The District Court found the following facts. Baden, who was vice-president, a director, and a member of the executive committee of Commercial National Bank, was also a director and member of the executive com-

mittee of the Savings Bank. R. Golden Donaldson was president, a director, and chairman of the executive committee of the Commercial National Bank, and was also chairman of the board of directors and of the executive committee of the Savings Bank. Baden carried on the negotiations for the extension of the note, in 1929, and sold the note to the Savings Bank, with the knowledge and under the direction of Donaldson. Both knew of the usury. When appellants' son was negotiating for the extension, Donaldson said to him, "We are going to renew the note for you but we are going to put it in our other Bank—the Mount Vernon Savings Bank." The purchase of the note was considered by the executive committee and approved by the board of directors of the Savings Bank. Its board of directors consisted of about twenty members, and its executive committee of about eight members. There is no evidence that any officer or member of the board of directors or executive committee of the Savings Bank, other than Baden and Donaldson, knew of the usury. There is no evidence that either Baden or Donaldson was present when the board of directors acted on the matter; but Baden testified that he "regularly attended" the executive committee meetings.

The District Court found as a conclusion of law that the Savings Bank purchased the note without notice. We cannot agree with that conclusion. The knowledge of Baden and Donaldson must be imputed to the bank under the rule that "notice to the agent is notice to the principal not only as to knowledge acquired by the agent in the particular transaction, but to knowledge acquired by him in a prior transaction, and still in his mind at the time of his acting as such agent, if the agent is at liberty to communicate such knowledge to the principal (Distilled Spirits [Harrington v. United States] 11 Wall. 356, 20 L. Ed. 167)."[1]

Appellee urges that a principal is not affected by his agent's knowledge when the agent acts adversely to the principal, since it cannot be supposed that the agent will defeat his own interest by disclosing his knowledge. Vincennes Savings & Loan Association v. St. John, 213 Ind. 171, 12 N.E.2d 127; Lohmuller Building Company v. Gamble, 160 Md. 534, 154 A. 41; note,

104 A.L.R. 1246. In Ohio Millers' Mutual Insurance Co. v. Artesia State Bank, 5 Cir., 39 F.2d 400, the bank was sued on a certificate of deposit which it had issued to J. C. Adderly, Inc., in payment for bonds which were fraudulent. J. C. Adderly, Inc., sold the certificate to the plaintiff insurance company. Adderly was president of plaintiff company, and approved its purchase of the certificate. The court allowed plaintiff to recover on the certificate, holding that Adderly's knowledge of the fraud should not be imputed to the company because his interest was adverse; had he disclosed his knowledge, it might have defeated the sale. On the other hand, in First State Bank of Keota v. Bridges, 39 Okl. 355, 135 P. 378, the cashier of a bank, acting on its behalf, took from the plaintiff notes which the cashier knew to be usurious. Subsequently the defendant bank was organized with the same cashier, and through him took from the first bank an assignment of the notes. In an action to recover interest which the plaintiff had paid, it was held that the cashier's knowledge was imputable to the defendant bank. It was the duty of the cashier to communicate his knowledge to his principal, and "there was nothing * * * to * * * justify any presumption that he would not discharge that duty. It does not appear * * * that its said cashier was adversely interested to either of these banks nor less interested in one than the other ; * * * the presumption would be that, to save himself from blame and possibly from legal liability, he would discharge his duty and impart his knowledge in this regard. It seems probable that, as cashier of each of these banks, he assumed plaintiff would assert no right under the usury laws, and, in consideration of whatever profit or advantage he thought each would thereby obtain, he was willing for each bank to take such risk."[2] Other cases in which an agent's knowledge of a defense to a note has been imputed to his principal, notwithstanding an adverse interest in the agent, are McKenney v. Ellsworth, 165 Cal. 326, 132 P. 75; Le Duc v. Moore, 111 N.C. 516, 15 S.E. 888; First National Bank of Morristown v. Leeton & Bro., 131 Miss. 324, 95 So. 445. In Manchester Nat. Bank v. Herndon, 181 Ky. 117, 203 S.W. 1055, 1056, which involved the defense of usury,

---

[1] Arlington Brewing Company v. Bluethenthal & Bickart, 36 App.D.C. 209, 211, 212, L.R.A.1918C, 901, Ann.Cas. 1912C, 294.

[2] 135 P. at page 381.

the court said: "Vaden represented both banks, and * * * did not represent himself at any time in connection with the note for $1,000; and, that being true, the rule that when a bank officer is personally interested in a note or other matter pertaining to the bank's affairs his knowledge is not to be imputed to his bank because his interest is best served by concealing it has no application here."

The probable state of mind of Baden and Donaldson is accurately portrayed in the quotation from the Bridges case. As far as appears, they were as much interested in one bank as in the other, and had no intention of benefiting either at the other's expense. They doubtless considered the transaction a profitable one for both. The Savings Bank bought a $39,200 note for $35,000. This is not a case in which interlocking officers transfer from Bank A to Bank B a note which appears to be bad or doubtful. If Baden and Donaldson had thought that the usury involved serious risk, they would hardly have contracted for the usury. They did contract for it immediately before the transfer to the Savings Bank.

▆▆ The real reason for the rule which charges a principal with his agent's knowledge is simply the injustice of allowing the principal to avoid, by acting vicariously, burdens to which he would become subject if he were acting for himself. The so-called presumption that the principal knows what the agent knows is irrebuttable; it cannot be avoided by showing that the agent did not in fact communicate his knowledge. It should follow that it cannot be avoided by showing that the agent had such an adverse interest that he would not be likely to communicate his knowledge. In general, "Notice should be imputed wherever there is agency or ratification."[3] Certainly where, as in this case, it does not appear that the agent acted unfairly toward his principal, or even that he would have derived any advantage from doing so, the principal should be charged with the agent's knowledge. Where an agent common to two parties betrays one

in favor of the other the second, of course, cannot charge the first with the agent's knowledge. Herdan v. Hanson, 182 Cal. 538, 189 P. 440. The present case differs from such cases not only in that here no one was betrayed, but also in that appellants never employed the Bank's agents, Baden and Donaldson, and are in no way responsible for their acts. The Supreme Court has held that if a company's agents withhold knowledge from it, even fraudulently, that fact "cannot alter the legal effect of their acts or of their knowledge with respect to the company in regard to third parties who had no connection whatever with them in relation to the perpetration of the fraud, and no knowledge that any such fraud had been perpetrated. * * * In such case the rule imputing knowledge to the company by reason of the knowledge of its agent remains."[4]

▆▆ Appellee cites Arlington Brewing Co. v. Bluethenthal & Bickart, 36 App. D.C. 209, L.R.A.1918C, 901, Ann.Cas.1912C, 294, and Martin v. Poole, 36 App.D.C. 281, in support of the contention that it is not chargeable with notice. But those cases were decided upon the ground that the persons who knew the facts did not act for the persons whom it was sought to charge with notice. In this case there was no evidence that either Baden or Donaldson participated in the meeting of the Savings Bank's board of directors at which the purchase was approved; but the burden was upon appellee to show that they did not participate.[5] The District Court erroneously ruled that the burden of proving notice rested upon appellants. By § 59 of the Negotiable Instruments Law (D.C. Code, Tit. 22, § 79), "* * * when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." Cf. O'Toole v. Lamson, 41 App. D.C. 276, 290. Brannon, Negotiable Instruments (5th Ed.) 669; 2 Daniel, Negotiable Instruments (7th Ed.) §§ 949, 955. The title of a person—in this case the Com-

---

[3] 2 Mechem, Agency (2d Ed.), § 1822; cf. §§ 1813, 1838.

[4] Armstrong v. Ashley, 204 U.S. 272, 283, 27 S.Ct. 270, 274, 51 L.Ed. 482, affirming 22 App.D.C. 368. Cf. 2 Mechem, Agency (2d ed.) § 1823.

[5] The participation of either was enough to charge the Savings Bank with

notice. "In case of a joint agency by several persons—as of the directors of a bank—notice to any one * * * while engaged in the business of the principal, is notice to the bank itself." Bank of the United States v. Davis, 2 Hill, N.Y., 451, 464. Mechem, Agency (2d ed.) § 1853.

mercial National Bank—who negotiates an instrument is defective, and the burden of proof is on the subsequent holder, if the consideration for the instrument was usurious. D.C.Code, Tit. 22, § 75 ("illegal consideration"); Kelly v. Industrial Operating Co., 329 Mo. 629, 46 S.W.2d 181; Davenport v. Kendrick, 148 Va. 479, 139 S. E. 295; First State Bank of Keota v. Bridges, 39 Okl. 355, 135 P. 378, 380.

 The Savings Bank contends that even if it acquired the note with notice of the usury appellants' two later renewals at 8 per cent, without bonus, constitute a waiver of the defense. The renewal of an instrument, when the maker knows that he has a defense such as fraud or duress, is commonly held to preclude the assertion of the defense;[6] if the new contract is free from fraud and duress, it is free from objection. By the same token, the renewal of an originally usurious note validates the transaction if all elements which made it usurious are eliminated. But if the lender retains money received as usury, the usurious element is not eliminated; and therefore the defense of usury may be set up against the renewal contract.[7] There is no reason why the maker's knowledge of the usury, which did not validate the original contract, should validate the renewal. The usury law protects the maker in spite of knowledge. The same financial pressure which forced him to submit to usury in the first place may force him to renew. To permit a mere renewal or extension of the contract to purge the ursury would defeat the purpose of the statute. Moreover the statute provides that payments of interest on a usurious contract are "taken to be payments made on account of the principal debt."[8] It follows that the interest and "bonus" payments on the usurious extension of 1929, at least, had the effect of reducing the principal; that the amount of the principal which remained

unpaid when the note was renewed in 1931, and again in 1932, was therefore not $39,200, but a considerably smaller sum; and that these renewal contracts, which promised 8 per cent interest on $39,200, were themselves usurious. To these later renewals the Savings Bank was a party.

Appellants attack, also, the ruling of the District Court that the Savings Bank took before maturity, and the exclusion of evidence tending to show that it and not the Commercial Bank received the $4,200 bonus. We need not consider the correctness of these rulings.

Reversed.

STEPHENS, Associate Justice concurs in the result.

---

[6] 8 Am.Jur. § 350; notes, 35 A.L.R. 1258, 1270; 72 A.L.R. 600, 605.

[7] Nicrosi v. Walker, 139 Ala. 369, 37 So. 97; Koehler v. Dodge, 31 Neb. 328, 47 N.W. 913, 28 Am.St.Rep. 518; Raynolds v. Carter, 12 Leigh, Va., 166, 37 Am. Dec. 642; Foskin v. Laessig, Mo.App., 32 S.W.2d 768. Cf. Cobe v. Guyer, 237 Ill. 568, 86 N.E. 1088, 1090. Contra: Fowler v. Garret, 3 J.J.Marsh, Ky., 681 (but cf. Neal v. Rouse, 93 Ky. 151, 19 S. W. 171); Chadbourn v. Watts, 10 Mass. 121, 6 Am.Dec. 100; Smith v. Stoddard,

10 Mich. 148, 81 Am.Dec. 778 (but cf. Gladwin State Bank v. Dow, 212 Mich. 521, 180 N.W. 601, 13 A.L.R. 1233); Ghormley v. Hyatt, 208 N.C. 478, 181 S. E. 242, 108 A.L.R. 618. Cf. 13 A.L.R. 1213, 1220, 74 A.L.R. 1184, 1186.

[8] D.C.Code, Tit. 17, § 5. It has been held, in respect to the one-year statute of limitations on recovery by the debtor of usury which he has paid, that usury is not paid until the entire principal, plus legal interest, has been returned to the lender. Brown v. Slocum, 30 App.D.C. 576.