Jessie Mae **WARREN**, Appellant,

v.

Albert **LOPATIN** et al.

No. 24710.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 12, 1972.

Decided March 20, 1973.

Marilyn Fisher, Washington, D. C., for appellant. Maribeth Halloran and Christine LeFlore, Washington, D. C., were on the brief for appellant.

Leonard C. Collins, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

PER CURIAM:

This appeal challenges a judgment of the District Court denying an injunction sought to permanently restrain the sale of appellant's home to satisfy the lien of a second deed of trust thereon.[1] The deed of trust secures the payment of a negotiable promissory note in the original principal sum of $3,900 bearing interest at the rate of 6% per annum. The note is payable, as to both principal and interest, in 59 monthly installments of $39 each and a final installment at 60 months for the unpaid balance. Appellant has defaulted in timely payment of the installments, and the power of sale conferred by the deed of trust has been invoked. The District Court's judgment if left standing will, of course, allow the sale to go forward.[2]

The note and deed of trust emanated from the second of two transactions by which appellant was to have received a loan of $1,000 from Northwest Mortgage Corporation. As the uncontradicted evidence demonstrated[3] and the District

---

1. Appellant also sought, and was denied, cancellation of the deed of trust and the note which it secured.

2. The District Court first issued a temporary restraining order, and later a preliminary injunction, to maintain the status quo pending decision as to a permanent injunction. After denying the latter, the court enjoined foreclosure of the deed of trust pending this appeal on condition, however, that appellant keep current the indebtedness secured by the first deed of trust.

3. The first transaction netted $436 in cash for appellant and her note and deed of trust in the amount of $1,590 for North-

Court found,[4] appellant was duped into signing the papers calling for repayment of the much larger sum.[5] Northwest subsequently negotiated the note to Howard Investment Corporation which, in turn, sold it to appellee.[6]

One of the contentions advanced on appeal is the claim that appellee has not established that he is a holder in due course and consequently, that he took the note subject to two defenses to payment. One defense is presented by appellant's assertion that the note is usurious, and on that score the District Court found that in return for the $3,900 interest-bearing note, appellant received only $625.[7] The other defense is erected by appellant's allegations that her execution of the note and deed of trust was obtained by fraud.[8] In that connection the District Court found, as to the first transaction, that "[t]he papers were placed rapidly in front of her for signature, one on top of the other so as to shield the contents from her view, and were snatched away after she affixed her signature so as to preclude her from reading them." As we read the Court's opinion,[9] it was of the view that at the second transaction the treatment was not essentially different.

The District Court held, however, that appellee was a holder in due course, and that for that reason neither of appellant's defenses could prevail. Although the court found that the note was usurious, it ruled that the illegality could not be successfully urged against such a holder. And although the court characterized appellant as "a victim of a group of 'fast operators,'" it further ruled that she had a reasonable opportunity to obtain knowledge of the terms of the note before signing it and, as a consequence, her fraud defense was unavailing against a holder in due course. So it was that the court's conclusion that appellee occupied that status became critical.[10] And so it is that, because in the present state of the record we are unable to satisfactorily review all facets of that determination, we must remand the record to the District Court for the development of additional information.[11]

The substantive and evidentiary prerequisites to holding in due course are specified by the Uniform Commercial Code.[12] "A holder in due course," the Code states, "is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."[13] Our instant concern, of course, stems from the lack-of-notice requirement. The Code fur-

---

west. Appellant claims that she was given no opportunity to read the papers before signing. See text *infra* following note 8. When she protested to Northwest and was told that she did not receive more money because her note was not large enough, she indicated that she was willing to sign a note for as much as $2,300 to get an additional $360 which she needed. The second transaction followed, and it led to cancellation of the original papers, execution of the note and deed of trust in suit, and $189 more for appellant. When, two weeks later appellant learned of the size of her new indebtedness, Northwest's telephone had been disconnected.

4. See text *infra* following note 9.

5. Northwest and its principal officer were made parties to appellant's suit but process could not be served on either.

6. The balance then due was $3,851.23. Appellee paid $3,080.98 for the note.

7. See note 3, *supra*.

8. See note 3, *supra*.

9. The opinion is unpublished.

10. Northwest Mortgage Corporation obviously was not a holder in due course, and the District Court made no finding as to whether Howard Investment Corporation was. Therefore, it was necessary for appellee to demonstrate that he himself was a holder in due course since the record does not establish that he held through one.

11. Appellant urges additional grounds in support of her position that appellee is not a holder in due course. We reserve our ruling on all contentions until after completion of the remand.

12. D.C.Code § 28:1–101 et seq. (1967).

13. Uniform Commercial Code § 3–302(1), D.C.Code § 28:3–302(1) (1967).

ther provides that "[a]fter it is shown that a defense exists," as indeed appellant did show, "a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course." [14] Two circumstances hamper our efforts to ascertain whether these standards have been met.

The first is an apparent inconsistency in the District Court's findings as to whether the note was overdue when appellee acquired it. The court stated that "[o]n August 10, 1966," appellee "gave Howard Investment $3,080.98 for the note" and "ascertained that payments were current at the time of purchase. . . ." The note stipulated, however, that installments were to be paid on the 9th of each month, and while it is clear that the installment due July 9, 1966, was paid on July 20, the record indicates that the installment due August 9 was not paid until August 12. The significance of these circumstances derives from the Code's provision that a purchaser "has notice that an instrument is overdue if he has reason to know . . . that any part of the principal amount is overdue. . . ." [15] One of the objectives of our remand is a determination as to exactly when appellee became holder of the note and the payment status of the note at that time.

Our second difficulty stems from the fact, evidenced by numerous references in the record, that appellee purchased the note on the recommendation of his accountant. The District Court found that there was nothing irregular in the purchase transaction that should have aroused appellee's own suspicions,[16] but the probe into notice cannot end at that point. Additional questions are whether the relationship between appellee and his accountant was such that appellee was chargeable with notice of facts within the knowledge of the accountant, and whether the accountant had any information which if possessed by appellee himself would have impaired his status as a holder in due course.[17]

The record shows that appellant had previously purchased another note on the accountant's advise. It indicates, too, that the accountant may have serviced the accounts of Howard Investment Corporation, appellee's vendor, and Ilene Investment Company, Howard's collection agent. That the accountant had some acquaintance with the note is evident from his recommendation that appellee buy it. Appellee cannot discharge his burden of establishing that he is a holder in due course without a satisfactory explanation of these circumstances. And should it develop that, as a result of their relationship, notice to the accountant is imputable to appellee, we are unable to perceive how the disclosure of the accountant's knowledge can be satisfactorily made without calling him as a witness in the proceeding.

The record in this case is remanded to the District Court to enable the inquiries and determinations we have identified, and any related matters which may come to its attention. We reserve, in the meantime, our decision on the issues presented on appeal.

So ordered.

14. Uniform Commercial Code § 3–307(3), D.C.Code § 28:3–307(3) (1967).

15. Uniform Commercial Code § 3–304(3), D.C.Code § 28:3–304(3) (1967).

16. But see discussion in text following note 14.

17. See Uniform Commercial Code § 1–103, D.C.Code § 28:1–103 (1967) ; Bowen v. Mount Vernon Sav. Bank, 70 App.D.C. 273, 274–277, 105 F.2d 796, 797–798 (1939).