FIRST NAT. BANK OF MORRISTOWN, TENN., *v.* C. W. LEETON & BRO.

[95 South. 445. No. 22222.]

1. BANKS AND BANKING. *Purchase of note from copartner with known defenses by officer of bank held notice to bank.*

Where the president of a bank is a part owner in a promissory note to which he knows there are defenses, and purchases this note for the bank from his copartner, with the intent and purpose of either defrauding the maker of the note or the bank, for the individual gain of himself and his copartners, his knowledge of the defenses to the note is either notice or knowledge of the bank.

2. CORPORATIONS. *Knowledge of highest executive officer acting for corporation, notice or knowledge of corporation itself.*

A corporation only acts through its officers and agents, and the knowledge possessed by the highest executive officer of the corporation, who acts for the corporation in the transaction, is either the notice or the knowledge of the corporation itself.

3. LICENSES. *Blue Sky Laws held not violated in negotiation of note.*

The facts in this case do not show that there was any violation of the so-called Blue Sky Laws, section 4127 et seq., Hemingway's Code, of the state.

4. BILLS AND NOTES. *Note secured from sale of stock in violation of Blue Sky Law not defense in hands of innocent purchaser.*

Even if stock in a mining corporation was sold in this state in violation of this law and a negotiable note given therefor, this violation of the law would not be a defense to the note in the hands of an innocent purchaser for value without notice.

APPEAL from circuit court of Coahoma county.

HON. W. A. ALCORN, Judge.

Action by the First National Bank of Morristown, Tennessee, against C. W. Leeton & Bro. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Maynard, Fitzgerald & Venable,* for appellant.

Appellees take the position that the note was void and therefore not good even in the hands of an innocent purchaser for value. They say it is void: First; because, the corporation for whose stock the note was given had never complied with the requirements of the Mississippi Stock Sale Law Statutes. We have sufficiently answered this contention pointing out there is no proof in the record to show that the corporation came within the class of corporations covered by the statute and in the second place there is no proof that the seller of the stock was acting as the agent for the corporation.

They next contend that the note is void because they say, according to the terms of the contract treasury stock was to be tendered in performance of it and this was not done. It needs no citation of authorities to show that this

contention does not affect the validity of a contract but only its performance. Counsel for appellees say page 2 of their brief) that the law is settled in Mississippi that a contract in violation of the statute is absolutely void no matter whether fully executed or executory; and they cite the case of *Bellew* v. *Williams,* 109 Miss. 74. This case simply decides that where the parties are *in pari delicto* the courts will not aid either one of them. The direct implication is, and the authorities in Mississippi so show, that if the parties in many instances are not *in pari delicto,* that the innocent party is permitted to recover and will receive the aid of courts.

It is stated by counsel for appellees (page 2 of his brief) : "Our contention is that the section referred to (a section of negotiable instrument law declaring that a holder in due course shall take free from defective title of prior parties) is not applicable where the paper was void between the parties to it and that a holder in due course cannot recover where the note is void because given for an unlawful consideration as clearly expressed by the statute."

The statutes are analogous to statutes on gaming and usury. In support of their contention, they cite the case of *Twentieth Street Banks* v. *Jacobs,* 74 W. Va. 528. A gambling statute was here involved. This case belongs to the minority view and turns upon the construction given the gaming statute of that state and the view held that it rendered the contract absolutely void.

Mr. Williston, in his work on Contracts, in speaking of enforcibility of negotiable instrument given for a gambling debt and the right of a holder in due course, particularly as section 1776, has this to say: "The only conflict concerning the enforcibility of a negotiable instrument given for a gambling debt arises when it has come into the hands of a holder in due course. In regard to illegality generally the rule is clear that unless a statute clearly declares void a negotiable instrument in the hands of all parties, a holder in due course can recover."

We call the court's attention to the case of *Citizens National Bank* v. *Bucheit,* Alabama case reported in 71 So. 82, (72 So. 1019), which was a case of a note of a foreign corporation doing business illegally and where this was set up as a defense. The court held the note was good in the hands of an innocent purchaser, for value notwithstanding the foreign corporation had not complied with the statutes authorizing it to do business in the state. See also *Bluthenthall* v. *Columbia,* 175 Ala. 398; *Commercial National Bank* v. *Jordon,* 71 Fla. 566; and *Hunt* v. *Davenport,* 138 Ga. 622.

We do not think, however, it is necessary to go into the question of the effect of illegality on a negotiable instrument in the hands of a purchaser for value in due course since the record in this case does not, as we have shown, bring the case at bar within the principle. It is next urged that the bank had notice because Mr. Forgey, the president, according to defendant's theory, was acting for the bank at the time of his effort to collect the note, regardless of whether notice to him was notice to the bank, at the time of the discounting of the note. We need no citation of authority to show that the notice to be effective must be notice received at the time of the transaction itself. At the time of the president's effort to collect the note, the rights of the parties had long been fixed.

It is next submitted that whatever error or errors there were in the instructions for appellees were cured by the instructions for appellant. We do not understand this contention since the record shows that all the instructions asked by appellant were refused except one which was not modified and this was not used before the jury, so that the appellant used no instructions for the jury and hence there could not be any such thing as curing the instructions for appellee.

We respectfully submit that the judgment of the court below should be reversed and judgment entered in favor of the bank which is, according to appellee's own theory

of the proof, an innocent purchaser for value of the note in due course of trade.

*J. W. & J. C. Cutrer,* for appellees.

Suffice it to say that the note given in payment of the stock in the Southern Exploration Company, was void as between the parties, for two reasons: First, because there was a violation of the law of the state of Mississippi, dealing with the sale of stock in foreign corporations which have not complied with the laws of the state respecting certain conditions precedent.

Section 4141 of Hemingway's Code, provides that if any person shall sell or contract to sell, directly or indirectly, any stock of any corporation, subject to the act, which has not complied with the terms of the act, that person shall be guilty of misdemeanor and punished by a fine and imprisonment.

Sections 4127 and 4128 of Hemingway's Code, forbid any mining corporation, attempting to increase its capital stock, to sell its stock unless the conditions of the act are complied with.  The Southern Exploration Company, is a corporation supposed to be engaged in the mining of zinc. The action of the corporation in selling its stock may be regarded as an attempt to increase its capital stock.  The statute should be construed very broadly.  It was clearly the intention of the legislature in passing these laws to protect the citizens of the state from fraudulent practices by corporations or their agents.

In connection with these sections of the code aforesaid, we might say at this time, that the corporation for whose stock the note was given, had never complied with the requirements of law, or made any pretense of doing so, to authorize it to do business in Mississippi. or to sell its stock here directly or indirectly.  The note was void as between the maker and the payee for the reason that the appellees had given same for the consideration that the stock should be issued directly from the corporation, and not

from an individual. Appellees never accepted the stock, but returned same immediately upon receipt thereof.

Appellant claims that it is a *bona-fide* purchaser for value without notice, of the note in controversy, and relies upon section 57 of the Negotiable Instrument Law. That section is in the following words: "A holder in due course holds the instrument free from any defective title of prior parties, and free from defenses available to prior parties, among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

The contract entered into between appellees and Thompson, the agent of the corporation, was void because it was in violation of the statutes of the state of Mississippi above referred to, and for the further reason, that Thompson did not comply with the terms of appellees in having the stock issued directly by the corporation. The law is well settled in this state that a contract in violation of the statute, is absolutely void no matter whether fully executed or executory. *Bellew* v. *Williams,* 109 Miss. 74.

The question for consideration before the court now, is whether section 57 of the N. I. L. is available for the use of the appellant. Our contention is that the section referred to is not applicable where the paper was void between the parties to it, and that a holder in due course cannot recover where the note is void because given for an unlawful consideration as clearly expressed by the statute. It is and has been the policy of this state to protect its citizens from the pernicious activities of stock salesmen of corporations of the character of the one here. The statutes are analogous to statutes on gaming and usury. In this connection, the supreme court of West Virginia, in the case of *Twentieth Street Bank* v. *Jacobs,* 74 W. Va. 528, said: "It has been the policy of this state to suppress gambling, and the statutes making gaming contracts void were founded upon what the legislature has for many years deemed to be sound public policy. It is not conceivable that the general assembly in the passage of the Act of 1904,

for the protection of innocent holders of negotiable in-. struments, intended to or did repeal section 1955, Kentucky Statutes 1903, which declares all gaming contracts void. In our opinion the disappointment now and then of an innocent holder of a negotiable instrument would not be as hurtful and injurious to the best interests of the state as the removal of the ban from gaming contracts."

We contend that the section applies only to paper which might have been obligatory between the parties, and submit that where the parties were never bound because the law made the note void as contrary to public policy as expressed in the statutes, the N. I. L. passed subsequent to the sections of Hemingway's Code above referred to, should be read in view of its purpose, and not as intending to repeal statutes passed in the exercise of the police powers of the state to suppress crime and fraud. *Alexander* v. *Hazelrig,* 123 Ky. 677; *Lawson* v. *First Nat. Bank,* 102 S. W. 324; *Citizens Bank* v. *Crittenden Record Press,* 150 Ky. 634; *Holzbog* v. *Bakrow,* 156 Ky. 161; *Raleigh Co. Bank* v. *Poteet,* 74 W. Va. 511; *Twentieth St. Bank* v. *Jacobs,* 74 W. Va. 528.

There was no error we submit in the refusal of the court to grant a peremptory instruction for the appellant. There was a question of fact for the jury whether or not the appellant was a holder in due course of the note sued upon. If we grant for the sake of argument that the appellant was not affected with notice of the transaction between the original parties, through its president, because at the time it purchased the paper he was acting for his own interests and not for the bank, nevertheless, when its president came to Mississippi to collect the note for the bank, the appellant, he was at that time acting for the appellant in collecting same, and anything he may have done or said at that time with respect to the transaction could be used against the appellant. At the time the appellant purchased the paper it made no inquiries as to how Thompson acquired the note. The N. I. L. requires the holder of the note when the maker sets up that the holder is not a *bona-*

*fide* purchaser without notice, to show that it is such. It is a question for the jury in that case to determine whether or not the holder's contention is well taken. In the present case the jury found that the appellant was not such a holder.

SYKES, P. J., delivered the opinion of the court.

The appellant bank sued appellees upon their promissory note. The appellees pleaded failure of consideration, a violation of the so-called Blue Sky Laws of this state, and that the appellant bank was not an innocent purchaser for value. Mr. Forgey, president of the bank, testified that he bought the note for the bank, at the bank, for a valuable consideration before maturity, and that he knew nothing about the consideration of the note. The note is dated February 11, 1920, and is made payable to Barney Thompson or order. Mr. Forgey was asked on examination if he did not know that the note was given in payment for some stock in a zinc mine, a Tennessee corporation; that Thompson had sold certain shares of stock in this mine to the appellees, which stock was to be issued by the corporation. This witness denied all knowledge of the consideration of the note and all knowledge of the fact that he knew Thompson was selling any stock of this corporation. The witness further testified that he was acting within his duties as president of the bank in the purchase of this note.

One of the appellees testified that Thompson came to his house and agreed to procure for him from the zinc company a certain number of shares of stock for which this note was executed. The amount of the note represented, according to this witness, the par value of the shares of stock. The witness testified that he knew some of the stock of this corporation which had been previously issued to individuals was being sold for one-half its par value; that what he wanted was stock issued in his name by the company; that Thompson told him the reason he would have to pay

par for the stock issued by the company was because he (Thompson) would have to pay the company this amount for the stock. This witness then, in a rather vague and indefinite way, stated a conversation alleged to have taken place between him and Thompson about Mr. Forgey and some one else. This conversation was not objected to by the appellant. The purport of this testimony was in effect that Thompson and Forgey were partners; that they divided the money from notes collected by them for purchase of this stock; that a man by the name of Mitchell was also a partner. This witness further stated that, when Mr. Forgey came to Clarksdale to try and collect this note, Forgey told him that the reason they sent him stock issued to some other individual was in order to evade the so-called Blue Sky Laws of Mississippi.

The uncontradicted testimony showed that Thompson agreed to sell him one kind of stock in this concern, but sent him stock of a different character, which, of course, showed a failure of consideration.

The jury returned a verdict in favor of the defendant, upon which judgment was entered, and from which judgment the appellant prosecutes this appeal.

On behalf of the defendant the following two instructions were given:

"The court instructs the jury for the defendant that the burden of proof in this case is upon the plaintiff to show that it is the *bona-fide* holder for value of said note in question, and if you believe from the evidence in the case that Mr. Forgey, president of the First National Bank of Morristown, at the time he claims to have purchased said note for said bank, knew that said note was given in payment of shares of stock in the Southern Exploration Company and knew and had reason to believe that said stock was worthless, and further knew that said stock was issued in the name of some individual other than defendant herein, in order to defeat the laws of the state of Mississippi, then you will find for the defendant.

"No. 2. The court instructs the jury that if you believe from the evidence that Mr. Forgey, as president of the plaintiff's bank knew that the defendant did not receive the stock which they contracted to buy, and knew that the stock of the Southern Exploration Company was not to be issued to defendant as purchasers thereof by said company, but that the stock of some individual was in fact to be delivered to defendants on their purchase, and knew such facts at the time he purchased the note sued on, you will find for the defendant."

All instructions requested by the plaintiff in the lower court were refused. Among others, this instruction was refused the plaintiff:

"The court charges the jury that a purchaser for value in due course of business, and who has no notice as to the existence of any defense existing between the parties to the note, takes the note free from these defenses, and it is immaterial what defense the maker of the note had against the person to whom the note was made payable; and in this case even the jury may believe that Leeton Bros., having a defense as against the original holder of the note, the payee, they must still find for the plaintiff, if they further believe from a preponderance of the evidence that at the time it bought the note it had no notice of any such defense."

The plaintiff was also refused a peremptory instruction.

The first question presented by this appeal is whether or not the plaintiff was entitled to a peremptory instruction. It is earnestly insisted by appellant's counsel that the testimony of the defendants shows in effect that when the president of this bank purchased this note he was in fact a part owner of the note; that he knew there had been a total failure of consideration for the execution of the note, and for his own personal interest by purchasing the note for the bank he was not acting as the agent for the bank, but was in pursuit of his own fraudulent purposes to defraud either the bank or the defendants; that the principal is only chargeable with a notice of that knowledge of the agent, which knowledge it will be presumed the

agent will communicate to his principal; that it is never presumed that an agent will communicate to his principal his purpose to defraud either that principal or some one else.

The president of the bank, Mr. Forgey. testified that he was authorized by the bank to purchase notes. Under his testimony he knew nothing whatever for what the note was given, was in no wise concerned in the zinc company, nor a partner in any way with Thompson and Mitchell.

Pretermitting all questions as to the admissibility of the testimony of the defendants, from it the jury were authorized to believe that Forgey, Mitchell, and Thompson were partners in the ownership of this note; that it was their intention and purpose to have the bank purchase the note through Forgey, its president, and thereby defraud either the bank or the makers of the note. The note was indorsed by Mitchell and sold by him to the bank which acted through its president, Forgey, in the purchase of the note.

Counsel for appellant has called our attention to many authorities, some of which apparently sustained his contention, but which upon closer investigation are not in point; while others in point of fact do sustain this contention. There are other authorities, however, to the contrary. The express question here in issue has not heretofore been decided by this court.    •              (

One of the well-known exceptions to the rule that notice to an agent is notice to the principal is that where an agent has been guilty of an actual fraud contrived and carried out for his own benefit, by which he intended to defraud and did defraud his own principal as well as perhaps the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his own client, then, under such circumstances, the principal is not charged with constructive notice of facts known by the attorney and thus fraudulently concealed. 2. Pomeroy's Equity, section 675. In a note to this text on page 1360, this distinguished author states that—"Whether this ex-

ception can apply to directors, presidents, and other managing officers of a corporation through whom alone a corporation can act may, I think, be doubtful"—citing authorities which hold banks liable under these conditions.

There are a great many cases to be found to the effect that, where an agent represents two principals and concocts a scheme to defraud one of them for the benefit of the other, it will be presumed that he did not disclose to the principal he intended to cheat the means by which he sought to effect his purpose, and consequently that the principal was not charged with this fraudulent intent or notice. A case along this line is that of *Gunster* v. *Power Co.,* 181 Pa. 327, 37 Atl. 550, 59 Am. St. Rep. 650.

In the instant case the president of the appellant bank was not the agent of any one except the bank. He did not act for his alleged copartners. Mitchell was representing the owners of the note, and Forgey the bank, in the negotiations for its purchase. In this case the ones to be defrauded were either, first, the makers of the note, the defendants in this case, or second, the bank. Forgey was not the agent of the defendants.

In the case of *Lilly* v. *Bank,* 102 C. C. A. 1, 178 Fed. 53, 29 L. R. A. (N. S.) 558, the general principles here involved are fully discussed. In that case one of the directors of the bank offered a note in the directors' meeting for discount, but during the consideration of the question by the other directors he withdrew from the meeting. Under a number of decisions of other courts it has been held that in this instance, where the director does not participate in the question of the acceptance of the note, then he is not acting for the bank, but is dealing with the bank as a stranger. There is a well-considered note discussing the authorities to this case.

In the case of *Scott County Milling Co.* v. *Powers,* 112 Miss. 798, 73 So. 792, the facts in that case show that the agent was representing two principals. It will also be noticed from the facts which are stated in the opinion that he ordered the flour as the agent of the Harding Door

Company from the milling company. In that case it was held that the milling company was not charged with his knowledge. In the case of *Cooper* v. *Robinson Investment Co.,* 117 Miss. 108, 77 So. 953, it was held that a bank which secured a deed from its president in settlement of a debt due by him to the bank was not chargeable with the president's knowledge of a prior unrecorded deed. In making this deed to the bank its president was not acting for the bank, but for himself individually. Neither of these Mississippi cases is in point.

In this case the highest officer of the bank, its president, purchased the note for the bank. If the knowledge possessed by him of the defenses to the note is not notice to the bank, then to whom should this notice have been given? The cashier is not as high an officer as the president. A corporation must act through its officers and agents; notice to the corporation is obtained through the knowledge or notice of its officers or agents. If any one had come to this bank for the express purpose of notifying it that this note was not a valid obligation, they would most naturally have asked for the officer intrusted with the power of purchasing notes, and in this instance that officer would have been its president who actually purchased the note. The bank could not through him purchase this note without having notice of the knowledge actually possessed by him. These questions are very well discussed in the case of *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698. In that case the leading authorities bearing upon this question are fully discussed. Another well-considered case sustaining our views is that of *Cook* v. *American Tubing & Webbing Co.,* 65 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 193. In this case the court quotes as follows from the case of *First National Bank* v. *Blake* (C. C.), 60 Fed. 78:

"Cornish held a promissory note as a pledge to be redelivered upon a certain contingency. He was president and general manager of the plaintiff bank, and, as such, dis-

counted the note for himself. The court held that the knowledge of the condition was imputable to the bank, and in accordance therewith the bank was ordered to surrender it the note. The court, after recognizing the cogency of the exception, says:

" 'But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction. If Cornish was the sole representative of the bank in the transaction with himself, there was no one from whom information could have been concealed or to whom it could have been communicated. If he was the sole representative of each party, each must have had equal knowledge. As the representative of the bank, his knowledge was not affected by his private interests, however much his conduct may have been. He necessarily knew as much in one capacity as he did in the other. The bank is charged with the knowledge which Cornish had.' "

This opinion then goes on to say: "We are constrained to hold with these cases, upon grounds of public policy which require that a corporation shall be held responsible for the knowledge which is possessed by those whom it appoints to represent it. From the nature of its constitution, it can have no other knowledge than that of its officers, and, in dealing with such officers, as with the corporation itself, third parties have a right to consider that what they know it knows. Indeed, when the presiding officer of a corporation is intrusted with the transaction of its business, with full power to bind the corporation in respect to such business, it seems more proper to call the knowledge which he has actual knowledge of the corporation rather than to say it is imputed."

We thoroughly agree with this enunciation and that the knowledge of the president of the infirmity of the note in this case is really the knowledge of the bank itself. To the same effect is the opinion of the court in the case of *First National Bank* v. *Burns et al.,* 88 Ohio St. 434, 103 N. E. 93, 49 L. R. A. (N. S.) 764. This opinion thoroughly dis-

cusses the authorities, and there is a note thereto referring to other authorities.

There is also another well-recognized rule of law which impels us to hold that in this case the knowledge of the president of the bank is the bank's knowledge, and that is that where one of two innocent persons must suffer because of the fraudulent conduct of a third person, this loss or suffering should fall upon the one who by his acts has clothed the third party with the power to commit the fraud; or, as stated in the case of *Loring* v. *Brodie,* 134 Mass. 453:

"The loss by such transactions must fall on that principal who has enabled his agent to commit the fraud."

This, of course, is the generally recognized rule.

The court was correct in refusing the peremptory instruction asked by the plaintiff.

It is contended by the appellant that the alleged statements or omissions made by Mr. Forgey at the time he went to Clarksdale to try and collect these notes were inadmissible. These statements, however, were made about the business he was transacting in Clarksdale, and for this reason were admissible.

The court erred in refusing the sixth instruction requested by the plaintiff. This instruction merely announced the well-known rule with reference to a negotiable instrument. Unless the president of the bank had knowledge of the infirmity of the note, the bank was a purchaser for value without notice and is entitled to recover in this case and this in effect is what this instruction states.

The first instruction given the defendant is erroneous. According to the testimony of the defendant, there was no violation whatever of the alleged Blue Sky Law of the state. This law is contained in section 4127 et seq., Hemingway's Code. There was no violation shown of any of the sections of this law. Under this testimony the zinc company was not attempting to increase its capital stock, nor was Thompson its agent.

Even if there had been a violation of this law, this would not constitute a defense to a negotiable instrument in the hands of an innocent purchaser for value without notice. The issues in this case should not have been beclouded in the instructions by reference to this law. This instruction is further erroneous because it makes some reference to the stock in the mining company as being worthless. The testimony does not show such fact, neither does the testimony show any representations as to its actual value.

The only issue presented by this record is whether or not the bank was an innocent purchaser for value without notice of this note.

*Reversed and remanded.*