E. F. ANDERSON, STATE BANK EXAMINER, *v.* T. E. GORDON.

[99 So. 501.  No. 24021.]

(Division B. April 7, 1924.)

APPEAL from chancery court of Lee county.
HON. A. J. McINTYRE, Chancellor.

*J. A. Cunningham, Flowers & Brown,* and *C. L. Hester,* for appellant.

The court is to keep in mind that we are dealing with no relation except that of bank depositor.  Gordon is not trying to hold the bank in any other character.  He is not undertaking to hold the bank as for a fraud practiced on him by Cox, the president of the bank.  But he is here dealing with a third party, the State Banking Department, which, under the law, undertakes to guarantee the

payment of money actually deposited in banks which are members of the system.

Gordon made no deposit in the People's Bank of Baldwyn. He thought he made one, perhaps, but he didn't. He brought to the bank a worthless check. And let it be conceded that the president of the bank told Gordon that it was a good check. That did not make it good. Not one dollar was added to the assets of the bank by this transaction. Gordon had swapped his cotton for a worthless check and this is a transaction with which the bank had nothing to do. He brought this check to the bank and the man who gave the check and who happened to be president of the bank, treated it as if it were good and undertook to substitute for it in Gordon's hands the obligation of the bank. The certificate is to the effect that T. E. Gordon has deposited in the bank $6,614.32. But this is false. Gordon had done nothing of the kind. On this record there is no conflict in the evidence as to what Gordon deposited. He did not turn one dollar over to the bank nor did he turn over to the bank a piece of paper that was worth anything.

Of course, Dr. Cox's check held by Gordon, if it had gone on through the bank, might have been paid, but the check was never paid. The deposit slip with the check unendorsed attached, were found by Mr. Anderson in Dr. Cox's private desk after the bank was closed, and Dr. Cox had left for parts unknown. There was no trace of the transaction whatsoever on the books of the bank. Let us assume that Gordon was led to believe that this check that Dr. Cox gave him was a good check. Still this would not convert him into a depositor. If it was not, in fact, a deposit, it cannot be made such by the representations of Dr. Cox, or by any acknowledgment that it was such by Dr. Cox, on behalf of the bank. Gordon knew that he was dealing with the president of the bank with respect to the president's personal and private affairs.

There must be a thing of value with respect to which the deposit contract is made. We understand that what-

ever the contract may be with respect to the receipt of money, or other valuable thing by a bank at the instance of its customers, the contract, whatever its nature, presupposes the delivery to the bank of the money or other thing of value. A deposit cannot be contracted into existence; the thing itself with respect to which the contract is made, must be in hand. A promissory note might be made out of it. In fact, the courts have had some trouble in deciding whether a time certificate of deposit is anything more than a promissory note. 7 C. J. 646.

The consideration for the issuance of a time certificate is the deposit in the bank; and unless there has been a deposit, there is no consideration. 7 C. J. 648.

It is important here to decide whether Mr. Gordon actually made a deposit in the bank. It is not sufficient to decide whether the bank, through the act of its president, became bound to pay Gordon this sum of money. That is a matter with which we have not in this controversy anything to do.

This petition was filed for the purpose of procuring a certificate from the third party, the guarantor. And in order to maintain this petition it is necessary to reach the decision that Gordon made a deposit in the bank on the basis of which this certificate was issued to him.

This is a plain case of an officer of the bank, acting in a dual capacity, taking up his own worthless obligations and substituting the obligation of the bank of which he was president. We ask that the court's attention be kept upon the situation of these parties; that an unusual and burdensome obligation is placed upon banks of the state to guarantee the re-payment of money actually deposited in banks; and that this obligation should not be enforced except in instances where there has been actually a deposit; not something which could only be construed into a deposit by estoppel, but obligations to persons who have actually deposited their money or other thing of value in banks.

*E. C. Sharp,* for appellee.

134 Miss.—41.

If the court should adopt the construction placed upon the law by appellant, no depositor would be protected by the guaranty act, except those who deposit in banks controlled, operated, and officered by men of unquestioned honesty, integrity, and business ability. In *National Bank* v. *Bank Commissioner,* 110 Kansas, 380, the supreme court of Kansas takes the opposite view, saying: "It may be assumed the legislature was familar with common forms of malfeasance of bank officers, and familiar with commercial and other uses of negotiable paper, including certificates of deposit. . . . Extent of the guaranty to be provided was a matter of legislative choice, and the legislature stopped with unsecured deposits. Deposits made in fact and in good faith are to be protected against the consequences of economic avalanche, financial panic, misfortune, poor banking methods, and dishonesty of bank managers."

Appellant argues that appellee deposited a check and not actual cash. Whether or not a deposit has been made depends upon the nature of the transaction. If at the time the owner hands in the check he demands to have it placed to his credit and is informed that it would be done, or if he holds any other species of conversation which practically amounted to demanding and receiving a promise of the transfer of credit and equivalent to the actual payment, the check will be the same as if he had received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irrevocable. Morse on Banks, 321; *National Bank* v. *Burkhardt,* 25 L. Ed. 766; *National Bank* v. *Bank Commissioner,* 110 Kansas, 580; cited and approved in *Trust Company* v. *Bank Commissioner,* 110 Kansas, 786.

It is contended that the assets of the bank were not increased by this deposit for the reason that the president of the bank appropriated the property to his own use. This same contention was answered in *Grenada Bank* v. *Moore,* 131 Miss. 339; *Miller* v. *Bank of Holly Springs,* 95 So. 129.

Appellee had no means of knowing or ascertaining whether or not this transaction was duly and regularly entered on the books of the bank, and cannot be held responsible for the failure of the officers of the bank to properly keep the books thereof.

Appellant contends that at the time of the presentation of the check of Dr. Cox, drawn on his own bank, there were not sufficient funds to his credit to pay it. When a check on itself is offered to the bank as a deposit, the bank has the option to accept or reject it. If accepted, the bank is estopped to deny liability therefor. *National Bank* v. *Burkhardt,* 25 L. Ed. 766.

A bank is bound by the acts of its officers, acting in the apparent scope of their authority. The Peoples Bank of Baldwyn was what is known as a "one-man's bank," Dr. Cox having absolute control and management of its affairs. This condition of affairs had existed for a number of years and was acquiesced in by the directors of the bank. 3 R. C. L. 441, 456, 457; 3 R. C. L. 526.

Argued orally by *J. N. Flowers,* for appellant, and *E. C. Sharp,* for appellee.

SYKES, J., delivered the opinion of the court.

This case is controlled by the case of *E. F. Anderson, State Bank Examiner,* v. *J. A. Yates et al.,* 99 So. 499, 135 Miss. ———, this day decided, wherein the material facts are identical with those of the present case.

                                        *Affirmed.*