ANDERSON, STATE BANK EXAMINER, *v.* YATES *et al.*

(Division B. April 7, 1924.)

[99 So. 499. No. 24019.]

BANKS AND BANKING. *Time certificate issued in payment of check drawn on issuing bank held "deposit" protected by guaranty act.*

Where a time certificate of deposit is issued by the president of a bank who is in charge of the bank's affairs and, authorized to

issue such certificates, issues a time deposit certificate in pay-
ment of the president's personal check drawn on such bank, the
holder of such check knowing nothing of the state of the presi-
dent's account in such bank, but acting in good faith and by
means of which transaction he loses title to cotton sold to the
president and loses his legal rights to protect his interest by
legal seizure and process, the transaction constitutes a "deposit"
within the meaning of section 38, chapter 207, Laws of 1916, sec-
tion 3596, Hemingway's Code, and is guaranteed under said act.

APPEAL from chancery court of Lee county.
HON. A. J. McINTYRE, Chancellor.

Proceedings between E. F. Anderson, State Bank Ex-
aminer, and J. A. Yates and another. From the judg-
ment rendered, the former appeals. Affirmed.

[NOTE: For Briefs of counsel, see companion case of
*Anderson, etc., v. Gordon,* 134 Miss. 639.]

*Flowers & Brown, C. L. Hester,* and *J. A. Cunningham,*
for appellant.

*E. C. Sharp,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The People's Bank of Baldwin, Miss., was closed for
liquidation by the state banking department on or about
the 21st day of December, 1922, and E. F. Anderson, the
appellant a member of the state board of bank examiners,
was designated to liquidate the said bank.  The appellees
applied to the banking department for certificates of
guaranty for time certificates issued by W. M. B. Cox,
president of the People's Bank of Baldwin, on the 22d
day of February, 1922, one time certificate being issued to
H. H. Yates for four thousand, two hundred and forty-
three dollars and fifty-five cents and one to J. A. Yates for
six thousand, four hundred ninety-two dollars and thirty-
two cents.  The two appellees are brothers, and the trans-
action with Cox, the president of the bank, was handled by
J. A. Yates.  The appellees had cotton on hand in Feb-

ruary, 1922, and Cox, the president of the bank, got into negotiations with them looking to the purchase of their cotton. Cox went to Booneville to see them and offered them the price they were demanding for their cotton, which price they had not theretofore been offered for said cotton. Cox bought the cotton and gave his check on the People's Bank of Baldwin to the respective owners. Cox seems to have made out deposit slips on the form of the Booneville Banking Company of Booneville, Miss., striking out the name "Booneville Banking Company" and inserting instead "People's Bank of Baldwin." It does not appear whether or not these deposit slips were delivered to the appellees; the appellees testified that they had no recollection of such being the fact. However, in a day or two after the check was given, J. A. Yates took the checks of the People's Bank of Baldwin and went into the office of Cox, president of the bank, and Cox proposed to issue them time certificates of deposit for the amounts. These deposits bore interest at the rate of four per cent per annum with no interest after maturity. These time certificates of deposit were signed by Cox as president of the bank, and turned over to J. A. Yates in exchange for the checks previously given by Cox; said checks being drawn on the People's Bank of Baldwin of which Cox was president and dominating factor. The Peoples' Bank of Baldwin, as above stated, was taken charge of in December following by the state banking department; Cox had disappeared from the community.

The bank examiners refused to issue certificates of guaranty on these time certificates. It appears that Cox never entered the transaction on the books of the People's Bank of Baldwin, and the books of the bank did not show the issuance of these time certificates of deposit. In the desk used by Cox as president of the bank, which desk was taken charge of by the bank examiners, were found the original checks, and the deposit slips made out on the forms of the Booneville Banking Company by striking out "Booneville Banking Company," and insert-

ing "People's Bank of Baldwin," were attached to the said checks.

At the time this transaction took place, Dr. Cox, the president of the bank, did not have to his credit in the bank the necessary amount of money to pay the checks, or to pay the amount for which the cotton was sold, but had only one thousand, three hundred and thirty-one dollars and forty-two cents to his credit on the 22d day of February, 1922, and the account remained approximately as it stood until the 3d day of May, 1922, when there was a deposit of four thousand, nine hundred and sixty-five dollars and fifty-six cents made to the credit of Dr. Cox, the president, in the People's Bank of Baldwin. The person who examined the books of the bank was asked if he knew from what source that deposit was received, and he stated that it was a cotton transaction of some kind; that it was a Tupelo draft, and that he had no way of identifying it as a cotton item, but that it was his understanding that it was a cotton draft. There was no other large deposit to the account of Dr. Cox in the People's Bank of Baldwin until the 9th day of December, when an item of eleven thousand, nine hundred and ninety-seven dollars and sixty cents was deposited to his credit, which the witness states he thinks was a loan of twelve thousand dollars on cotton, from the Bank of Tupelo. The appellee testified that he knew nothing of Dr. Cox's account at the bank, and that he took the time certificate in lieu of cash on the check of Dr. Cox, thinking it was all right.

The court below held that the transaction constituted a deposit which is guaranteed under the terms of the bank guaranty deposit law.

It is the contention of the appellant that whatever may be the rights of the appellees against the People's Bank as a corporation, the transaction did not constitute a deposit within the meaning of the law guaranteeing bank deposits; that nothing of value went into the bank or was received by the bank which could create a deposit in favor of appellees; that it was a personal transaction between

135 Miss.—8.

Dr. Cox as an individual, and the appellees; and that the check given appellees by Dr. Cox was worthless and of no value, and consequently that the bank received nothing by virtue of the transaction.

It seems to us that the question is to be determined by what the relation would be between the bank and the appellees if there was no guaranty law in force; as to whether or not it would be a deposit; and if it would constitute a deposit as against the bank, it would be a deposit within the meaning of the bank guaranty law.

We think the appellant is mistaken in the view that the check was worthless at the time it was given. If the check had been presented for payment and payment had been refused, the appellees could have seized the cotton for its purchase money and maintained an action against Dr. Cox and have garnisheed the money to the credit of Dr. Cox in the bank. But by means of issuing the time certificate of deposit, which was accepted in good faith and in ignorance of the true facts, the appellees lost their right to resort to a seizure of the cotton for the purchase money thereof. The bank had placed Dr. Cox in charge of its business. There is no pretense in the record at all that he did not have authority to issue certificates of deposit or to otherwise deal with the bank's affairs. In the case of *First National Bank of Morristown, Tenn., v. C. W. Leeton & Bro.,* 131 Miss. 324, 95 So. 445, it was held "that a corporation only acts through its officers and agents, and the knowledge possessed by the highest executive officer of the corporation, who acts for the corporation in the transaction, is either the notice or the knowledge of the corporation itself;" that where a bank president is part owner in a promissory note to which he knows there are defenses, and purchases this note for the bank from his copartner, with the intent and purpose of either defrauding the maker of the note or the bank, for the individual gain of himself and his copartners, his knowledge of the defenses to the note is either notice or knowledge of the bank.

This case reviews the authorities upon the proposition and adopts the rule that, where one of the two innocent persons must suffer because of the fraudulent conduct of a third person, the loss shall fall upon the one whose acts have clothed the third party with power to commit the fraud.

At page 336 of the Mississippi report of the case (95 So. 447), the court said:

"In this case the highest officer of the bank, its president, purchased the note for the bank. If the knowledge possessed by him of the defenses to the note is not notice to the bank, then to whom should this notice have been given? The cashier is not as high an officer as the president. A corporation must act through its officers and agents; notice to the corporation is obtained through the knowledge or notice of its officers or agents. If any one had come to this bank for the express purpose of notifying it that this note was not a valid obligation, they would most naturally have asked for the officer intrusted with the power of purchasing notes, and in this instance that officer would have been its president who actually purchased the note. The bank could not through him purchase this note without having notice of the knowledge actually possessed by him. These questions are very well discussed in the case of *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698. In that case the leading authorities bearing upon this question are fully discussed. Another well-considered case sustaining our views is that of *Cook* v. *American Tubing & Webbing Co.,* 65 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 193. In this case the court quotes as follows from the case of *First National Bank* v. *Blake* (C. C.), 60 Fed. 78:

"'Cornish held a promissory note as a pledge to be redelivered upon a certain contingency. He was president and general manager of the plaintiff bank, and, as such discounted the note for himself. The court held that the knowledge of the condition was imputable to the bank, and in accordance therewith the bank was ordered to sur-

render it the note. The court, after recognizing the cogency of the exception, says:

" ' "But there is no room for the application of this principle where the agent is the sole representative of both parties in the transaction. If Cornish was the sole representative of the bank in the transaction with himself, there was no one from whom the information could have been concealed or to whom it could have been communicated. If he was the sole representative of each party, each must have had equal knowledge. As the representative of the bank, his knowledge was not affected by his private interest, however much his conduct may have been. He necessarily knew as much in one capacity as he did in the other. The bank is charged with the knowledge which Cornish had." ' '

"This opinion then goes on to say: 'We are constrained to hold with these cases, upon grounds of public policy which require that a corporation shall be held responsible for the knowledge which is possessed by those whom it appoints to represent it. From the nature of its constitution, it can have no other knowledge than that of its officers, and, in dealing with such officers' as with the corporation itself, third parties have a right to consider that what they know it knows. Indeed, when the presiding officer of a corporation is intrusted with the transaction of its business, with full power to bind the corporation in respect to such business, it seems more proper to call the knowledge which he has actual knowledge of the corporation rather than to say it is imputed.'

"We thoroughly agree with this enunciation and that the knowledge of the president of the infirmity of the note in this case is really the knowledge of the bank itself. To the same effect is the opinion of the court in the case of *First National Bank* v. *Burns et al.*, 88 Ohio St. 434, 103 N. E. 93, 49 L. R. A. (N. S.) 764. This opinion thoroughly discusses the authorities, and there is a note thereto referring to other authorities.

"There is also another well-recognized rule of law which impels us to hold that in this case the knowledge of

the president of the bank is the bank's knowledge. This is that where one of two innocent persons must suffer because of the fraudulent conduct of a third person, this loss or suffering should fall upon the one who by his acts has clothed the third party with the power to commit the fraud; or, as stated in the case of *Loring* v. *Brodie,* 134 Mass. 453:

" 'The loss by such transactions must fall on that principal who has enabled his agent to commit the fraud.'

"This of course, is the generally recognized rule."

It may be a hardship upon the banks operating under the guaranty law to have to contribute funds to cover the evil doings of other banks or their officers, but it is competent for the legislature to impose conditions upon the doing of the banking business, and if banks operate under such law they do so subject to the liabilities imposed by the law. The great object of the bank guaranty law is to protect the ordinary depositors who do not charge more than four per cent. per annum, and to make as far as practicable the deposits in banks safe.

While it is true that the directors of the bank, perhaps, would not have approved of the transaction of issuing the certificates under the facts disclosed in this record, still it appears that Cox was intrusted with the management of the bank, and that subsequent to the transaction here he deposited large sums in the bank evidently obtained through cotton transactions. The bank had full power to protect itself from misconduct of this kind by requiring its officers and managers to give fidelity bonds and to more closely supervise and inquire into the transactions and business dealings of its officers.

In our opinion the law does not require the deposit of actual money, and, if a check is presented to a bank drawn upon itself by a customer of the bank, it has the right either to accept the check and pay it or to refuse payment. If it accepts a check so drawn without restriction or limitation, it cannot be heard afterwards to say that the drawer of the check did not have funds sufficient to pay the

check. Perhaps a majority of the deposits made in banks are made by means of checks, notes, and other choses in action or evidence of a commercial character.

We think the chancellor was correct in directing the issuance of the guaranty certificates, and the judgment will be affirmed.

*Judgment affirmed.*